# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

ELECTRALED, INC.,

        Plaintiff,

   v.

ASTERA LED TECHNOLOGY GMBH,
ASTERA MANUFACTURING LIMITED,
AND ASTERA DISTRIBUTION LIMITED,

        Defendants.

Case No. 2:24-cv-00512-JRG-RSP

JURY TRIAL DEMANDED

## DEFENDANTS' RESPONSIVE CLAIM CONSTRUCTION BRIEF

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ...................................................................................................................1

II.   CLAIM CONSTRUCTION DISPUTES ..............................................................................2

      A.    "a power supply residing within the rear receptacle" ['245 Patent, Claim 21] .......2

      B.    "wherein during operation, heat generated by the LEDs passes through the circuit board and then said heat is dissipated by the array of fins without the use of a fan" ['245 Patent, Claim 21]..............................................................................................4

III.  CONCLUSION......................................................................................................................9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*4WEB, Inc. v. NuVasive, Inc.*,
    No. 24-CV-1021 JLS (MMP), 2025 WL 525112 (S.D. Cal. Feb. 18, 2025)............................7

*IQASR LLC v. Wendt Corp.*,
    825 F. App'x 900 (Fed. Cir. 2020) .........................................................................6, 7

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
    572 U.S. 898 (2014).............................................................................................5

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
    521 F.3d 1351 (Fed. Cir. 2008)................................................................................4

*Prolifiq Software Inc. v. Veeva Sys. Inc.*,
    No. C 13-03644-SI, 2014 WL 3870016 (N.D. Cal. Aug. 6, 2014)...........................................9

*TVnGO Ltd. v. LG Elecs., Inc.*,
    No. CV-18-10238, 2020 WL 1899781 (D.N.J. Apr. 17, 2020), *aff'd sub nom.*,
    861 F. App'x 453 (Fed. Cir. 2021) .......................................................................6, 7

*Versata Software, Inc. v. Zoho Corp.*,
    213 F. Supp. 3d 829 (W.D. Tex. 2016)........................................................................8

**Other Authorities**

Patent Local Rule 4-3(a)(2) ..........................................................................................6

## I.    INTRODUCTION

The parties dispute the meaning of two terms in asserted claim 21 of US7,651,245 (the "'245 Patent"): (1) "a power supply residing within the rear receptacle" and (2) "wherein during operation, heat generated by the LEDs passes through the circuit board and then said heat is dissipated by the array of fins without the use of a fan."

Regarding the first term—"a power supply residing within the rear receptacle"—Defendants Astera LED Technology GmbH, Astera Manufacturing Limited, and Astera Distribution Limited's ("Defendants'") construction comports with the claims, specification, and prosecution history, and provides clarity to the jury as to what this term means in view of the claim requirement that the "rear receptacle" be defined by "an array of fins." In contrast, Plaintiff ElectraLED, LLC's ("Plaintiff's") request that the term be given its "plain and ordinary meaning" provides no guidance as to how a power supply can "reside" in an array of fins, fails to resolve the parties' dispute, and should be rejected.

Regarding the second term—"wherein during operation, heat generated by the LEDs passes through the circuit board and then said heat is dissipated by the array of fins without the use of a fan"—the contradiction between the claim language (which recites on its face that *all* of "said heat" is dissipated by the fins) and the specification (which requires that some heat be dissipated by the main body and some heat by the fins) cannot be resolved and renders the claim indefinite. Plaintiff's arguments, pointing to the multitude of ways the specification indicates heat may be dissipated, only amplify the contradiction.

## II.    CLAIM CONSTRUCTION DISPUTES

### A.    "a power supply residing within the rear receptacle" ['245 Patent, Claim 21]

| Defendants' Proposed Construction | Plaintiff's Proposed Construction |
|---|---|
| "a power supply received within the pocket defined by the array of fins" | Plain and ordinary meaning |

Claim 21 recites that the "LED light fixture" include "a power supply" "residing" within a "rear receptacle." '245 Patent (Ex. 1), Claim 21. Claim 21 further recites that this "rear receptacle" is "defined by an array of fins." *Id.* It is unclear from the claim language, however, how an array of fins can provide a "rear receptacle" for the power supply to "reside" in. Defendants' construction, which comes directly from the intrinsic evidence, resolves this—clarifying that the power supply is received within a pocket defined by the array of fins. Plaintiff's argument that this term should just be given a "plain and ordinary meaning" ignores the claim language, and provides no guidance to the jury as to how a power supply can reside within an array of fins.

The intrinsic evidence confirms how the claimed power supply can reside within the claimed array of fins, as recited by claim 21. Simply, the '245 Patent's specification teaches that the "rear receptacle" is a "***pocket***" defined by the "array of fins" and that the power supply is "***received***" in this pocket. *See* '245 Patent 4:18-21 ("The array of fins 40 extending outward from the housing 20 body defines a rear receptacle or ***pocket 105***, that is substantially rectangular, that ***receives*** the box 30 and the power supply 25.") (emphasis added); *id.* at Figs. 5-8. This "pocket" (105) in the array of fins (40) that receives the power supply (in box 30) is illustrated in Figure 8:



There are many other instances where the '245 Patent confirms "the power supply is received within a pocket defined by the array of fins." For example, it describes how the sizing and position of the fins can create the pocket (105) above, such that the "power supply box resides substantially within the rear receptacle 105." *Id.* at 4:21-36; *see also id.* at 3:47-48 ("[H]ousing 20 also includes a power supply box 30 that receives the power supply 25."), 2:34-37, 4:49-53, Figs. 2-3, 5-7.

Defendants' construction is further supported by the extrinsic evidence, as it comports with the plain and ordinary meaning of "receptacle," which is defined as "something used to receive and contain smaller objects." Ex. 2 (ASTERA_000694 ("Merriam-Webster's American English Dictionary (2003)") at ASTERA_000697; *see also* Ex. 3 (ASTERA_000698 ("The Penguin Dictionary (2nd ed. 2004)") at ASTERA_000701 (definition of "receptacle" is "an object that receives and contains something"). These definitions reinforce the understanding that a "receptacle" is something—in this case, a "pocket" formed in the array of fins—that "receives" and contains something else—in this case, a power supply.

3

Plaintiff's argument seems to be that a jury would "readily" understand the term's "plain meaning" as written, and that Defendants' proposed construction invites "unwarranted ambiguity by inserting the concept of 'received within the pocket defined by the array of fins.'" Br. 4-5. However, Claim 21 itself inserts the concept that the power supply resides within a "rear receptacle" defined "by an array of fins." '245 Patent, Cl. 21.[1] Defendants' construction provides clarity for the jury as to what the term "a power supply residing within the rear receptacle" means in the context of the claim taken as a whole. Plaintiff's does not.

Moreover, even if a claim term has a "plain meaning," as Plaintiff contends (Br. 4-5), if that meaning does not resolve the parties' dispute, "claim construction requires the court to determine what claim scope is appropriate in the context of the patents-in-suit." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008). Here, a construction is necessary because Plaintiff clearly disputes Defendants' construction. Plaintiff argues that "'residing within the rear receptacle' does not necessarily mean 'received within the pocket defined by the array of fins,'" and as such, should not be so "narrowly" construed. Br. 4-5. But it provides no indication of what its "plain and ordinary meaning" of the term is. Moreover, the broader interpretation that Plaintiff apparently plans to advance—which Defendant disputes—is not at all supported by the intrinsic record, because as described, the claim language itself recites that the rear receptable is defined by the array of fins and the specification explains how the "rear receptacle" is a "pocket" in this array of fins that receives the power supply. '245 Patent, Claim 21; 4:19-22, Figs. 2-3, 5-8.

**B.    "wherein during operation, heat generated by the LEDs passes through the circuit board and then said heat is dissipated by the array of fins without the use of a fan" ['245 Patent, Claim 21]**

---

[1] Plaintiff's arguments regarding the prosecution history are confusing at best. Br. 5. It is the claim itself, not an argument in the prosecution history, that requires that the rear receptacle be defined by an array of fins and that the power supply reside within this defined rear receptacle.

| Defendants' Proposed Construction | Plaintiff's Proposed Construction |
|---|---|
| Indefinite | Plain and ordinary meaning |

A patent claim is indefinite if, "viewed in light of the specification and prosecution history, [it fails to] inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014). The limitation of "wherein during operation, heat generated by the LEDs passes through the circuit board and then said heat is dissipated by the array of fins without the use of a fan" in Claim 21 is so imprecise that when, whether, and how the claim is infringed cannot be determined with reasonable certainty. As such, this term is indefinite for at least two reasons.

**First**, "a POSITA would not be able to determine, with reasonable certainty, whether 'heat generated by the LEDs [that] passes through the circuit board' means ***all heat*** generated by the LEDs, ***or some portion thereof***." Ex. 4 (Declaration of Dr. Michael Lebby) ("Lebby Decl.") ¶ 25 (emphasis added). Claim 21 first recites that heat is generated by LEDs and passes through the circuit. '245 Patent, Claim 21. It then goes on to recite that "***said*** heat is dissipated by the array of fins without the use of a fan." *Id.* (emphasis added). A POSITA reading the claim language alone, in its entirety, would understand that because "heat generated by the LEDs" is the antecedent basis for "said heat is dissipated by the array of fins without the use of a fan," "***all*** of the heat that gets generated by the LEDS goes to the array of fins." Ex. 5 (Deposition of Dr. Michael Lebby taken Aug. 21, 2025) ("Lebby Tr.") 65:9-16 (emphasis added); Lebby Decl. ¶ 25.

However, this understanding from the claim language is irreconcilably contradicted by the intrinsic record, rendering the scope of the claim indefinite. Nowhere does the specification indicate that it is possible for the array of fins alone to dissipate ***all*** of "said heat" generated by the

LEDs that passes through the circuit board. Instead, as Plaintiff concedes, the specification "provides a clear explanation that the fins are ***not the only means*** to dissipate heat." Br. 8 (emphasis added).[2] The specification uniformly states that it is at least the array of fins ***and the main body housing 45*** that dissipate heat generated by the LEDs that passes through the circuit board. '245 Patent, Abstract, 8:3-60, 3:26-28, Figs. 5-6. For example, it describes how "[a] first quantity of heat is dissipated to ambient through convection from the main body 45 as first flow path FQ1, and a second quantity of heat flows along a second flow path FQ2 into the fins 40 for convection to ambient." '245 Patent 8:23-26; *see also id.* at Figs. 5-6, Abstract, 3:26-28; Lebby Tr. 64:7-9 ("The way the words that are used in 245 is that the heat generated by the LEDs goes to the main body of the product as well as the fins of the product.").

Thus, rather than comporting with the claim language, which on its face states *all* heat generated by the LEDs that passes through the circuit board is dissipated by the array of fins, the specification instead "introduces additional ambiguities and potential inconsistencies."[3] Lebby Decl. ¶ 26; *IQASR LLC v. Wendt Corp.,* 825 F. App'x 900, 906 (Fed. Cir. 2020) ("[C]ontradictory examples in the specification introduce ambiguity to an otherwise clear term and render it indefinite"); *TVnGO Ltd. v. LG Elecs., Inc.,* No. CV-18-10238 (RMB/KMW), 2020 WL 1899781, at *3 (D.N.J. Apr. 17, 2020), *aff'd sub nom.,* 861 F. App'x 453 (Fed. Cir. 2021) (finding claim

---

[2] Plaintiff disregards Patent Local Rule 4-3(a)(2) and cites to various portions of the '245 Patent's specification outside that listed in the parties' Joint Claim Construction Statement (Dkt. 49), despite the rule stating that "[e]ach party's proposed claim construction or indefiniteness position for each disputed claim term, phrase, or clause, together with an identification of all references from the specification or prosecution history that support that position."

[3] The claims as originally filed with the application in fact recited that the "during operation, heat generated by the LEDs passes through the circuit board and then said heat is dissipated by the main body *and* the fins," consistent with the specification. Lebby Decl., ¶ 28 n. 1 (citing '245 File History). "By changing the wording in issued Claim 21 to state that 'said heat' is dissipated only by the fins, uncertainty and ambiguity is introduced such that a POSITA would not be able to determine the scope of issued Claim 21." *Id.*

term "activating" indefinite, in part, because meaning of the term derived from the claim language was "inconsistent" with meaning in specification.). Reading Claim 21 in the context of the specification, it "becomes unclear to a POSITA whether 'said heat' dissipated by the fins as recited in Claim 21 refers to all heat generated by the LEDs [that passed through the circuit board], or only some of that heat," and the claim is therefore indefinite. Lebby Decl. ¶ 25.

Despite Plaintiff's contention otherwise, Dr. Lebby does not "confuse[] breadth with indefiniteness." Br. 7. It is the very "breadth" of the '245 Patent's specification contradicting the claim language that renders the claim indefinite, as discussed above. *IQASR LLC,* 825 F. App'x at 906. Plaintiff further argues that whether "different implementations may dissipate heat based on different paths . . . is a [subjective] choice of embodiment rather than evidence of an indefinite claim term." Br. 7-8. This argument is irrelevant, as it does not remedy the inconsistency between the specification, which describes all embodiments as having flow paths through the array of fins ***and another component***, and the claim, which requires *all* of "said heat" to be dissipated by the fins. Lebby Decl. ¶¶ 26-29; *TVnGO,* 2020 WL 1899781, at *3 (finding claim terms indefinite, in part, because they were "internally inconsistent with their own specifications," where a POSITA was left to "wonder" the scope of the claimed invention); *see also 4WEB, Inc. v. NuVasive, Inc.,* No. 24-CV-1021 JLS (MMP), 2025 WL 525112, at *15 (S.D. Cal. Feb. 18, 2025). At best, Plaintiff's confirmation that the '245 Patent's specification "provides a clear explanation that the fins are *not the only means* to dissipate heat" amplifies the inconsistency. Br. 8 (emphasis added); *see also id.* at 6-7.

Moreover, Plaintiff alleges that the "lack of an antecedent basis of 'all heat,' 'some heat,' 'all' 'fins' or 'some fins,' by itself, does not demand a finding of indefiniteness." *Id*. But Plaintiff misunderstands Defendants' argument. It is the use of an antecedent basis ("said heat"), not the

lack thereof as Plaintiff seems to think (Br. 8-9), that causes the indefiniteness of the claim. Lebby Decl. ¶¶ 25-29.

*Second*, the asserted claim presents further uncertainty by requiring the heat to be "dissipated by an array of fins **without use of a fan."** Lebby Decl. ¶ 30. The intrinsic record does not allow a POSITA to understand, for example, whether no fan can be used in the device, or whether some "heat may be dissipated *with* the use of the fan." Lebby Tr. 46:25-47:3. The patentee is required to describe "not only what falls inside the scope of the claim term, but also what falls outside of it." *Versata Software, Inc. v. Zoho Corp.*, 213 F. Supp. 3d 829, 836 (W.D. Tex. 2016) (internal quotation omitted).

The '245 Patent does not provide any guidance to a POSITA because it contains **no mention of a fan at all** other than in issued Claim 21 itself (which was added without explanation during prosecution). Lebby Decl. ¶ 30 (citing '245 File History); *see also* Lebby Tr. 21:1-4 ("There's nothing in the intrinsic evidence, even in the prosecution history that talks about a fan, the size of fan, whether it's a micro fan or a printed circuit board fan"); *id.* at 57:2-17 (discussing the same). Thus, the specification provides no guidance as to what heat, if any, may be dissipated with a fan or whether the claim requires the use of no fan at all in the lighting fixture.

Plaintiff seems to ignore this lack of information, and states that whether the claimed LED light fixture does or does not have a fan is a "subjective choice of embodiment" and that "[n]othing prohibits the claimed 'without the use of a fan' from being completely without the use of a fan, or hav[ing] a fan installed on a location that is away from the heat flow path to the fins, or a fan installed along the flow path that could be configured not to dissipate heat." Br. 9-10 (citation modified). Plaintiff makes this conclusory statement without any support from the intrinsic record. Because it cannot. Neither the specification nor the prosecution history makes any mention of what

"without the use of a fan" means; indeed, there is no discussion or mention of a fan (or complete absence of a fan) at all.

Even if, as Plaintiff states, "applicants are entitled to the full scope of their invention if the specification supports it," (Br. 9), the '245 Patent's specification provides *zero* support for a configuration of the claimed invention with a fan, and no information on what it means to dissipate heat "without the use of a fan." Therefore, a POSITA has no way of knowing what configuration of a LED lighting fixture including a fan would or would not infringe Claim 21. Lebby Decl. ¶ 31; Lebby Tr. 22:2-7 ("[A]s an expert who is a person of ordinary skill in the art at the time of the invention that when a claim element says 'without the use of a fan,' then I will want to see the situation that is described in the patent where a fan would be used, and that's not described. . . "); s*ee* also *Prolifiq Software Inc. v. Veeva Sys. Inc.,* No. C 13-03644-SI, 2014 WL 3870016, at *6 (N.D. Cal. Aug. 6, 2014) (finding term "differently versioned digital" to be indefinite where specification "d[id] not provide information about when something is not differently versioned digital content element").

For the reasons above, the phrase "wherein during operation, heat generated by the LEDs passes through the circuit board and then said heat is dissipated by the array of fins without the use of a fan" is ambiguous, contradicts the specification, and provides no guidance as to whether and how a fan may be used, if at all. A POSITA would therefore be unable to ascertain the scope of the claim term with reasonable certainty and such term is indefinite.

## III.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court adopt its proposed constructions (including findings of indefiniteness) of the disputed claim terms and phrases.

Dated: September 12, 2025

Respectfully Submitted,

/s/ *Joseph J. Raffetto*
**HOGAN LOVELLS US LLP**
Joseph J. Raffetto
Scott Hughes
555 Thirteenth St, NW Washington, DC 20004
Telephone: (202) 637-5600
Facsimile: (202) 637-5910
Email: joseph.raffetto@hoganlovells.com
Email: scott.hughes@hoganlovells.com

Yi (Sally) Zhang
4 Embarcadero Ctr #3500
San Francisco, CA 94111
Telephone: (415) 374-2300
Facsimile: (415) 374-2499
Email: yi.zhang@hoganlovells.com

**POTTER MINTON, PC**
Michael E. Jones
Shaun W. Hassett
102 N College, Suite 900
Tyler, TX 75702
Tel: (903) 597-8311
Fax: (903) 593-0846
Email: mikejones@ptterminton.com
Email: shaunhassett@potterminton.com

*Counsel for Defendants Astera LED Technology GmbH, Astera Manufacturing Limited, and Astera Distribution Limited*

## CERTIFICATE OF SERVICE

I hereby certify that on September 12, 2025, I electronically filed the foregoing document using the CM/ECF system which will send notification of such filing to counsel for all parties of record.

/s/ *Melissa Westbrook*
Melissa Westbrook